UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MICHELE PERRETTA and ANNA PERRETTA,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN RESIDENTIAL EQUITIES LIX, LLC, ALIAS, STATEBRIDGE COMPANY, LLC, ALIS, MARIX SERVICING, LLC, WESTBOURNE CAPITAL, LLC, AMERICAN RESIDENTIAL EQUITIES, LLC, ALIAS, ACQURA LOAN SERVICING, ALIAS, AND JOHN DOE, ALIAS,<br>Defendants. | Civil Action No. 1:12-cv-00927-M-LDA |

**DEFENDANT MARIX SERVICING LLC'S MOTION TO DISMISS**

**(Memorandum of Law Incorporated)**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Marix Servicing, LLC ("Marix" or the "Defendant") move that this Court dismiss the Complaint filed by Plaintiffs Michele and Anna Perretta (the "Perrettas" or the "Plaintiffs").

## INTRODUCTION

Plaintiffs, mortgagors, filed this action against, among others, their former loan servicer, Marix. The Plaintiffs claim that Marix violated the Fair Debt Collection Practices Act ("FDCPA") by attempting to enforce a mortgage granted by the Plaintiffs. The Plaintiffs do not dispute that they signed the mortgage or that they have failed to make payment and are in default. Rather the Plaintiffs claim that Marix lacks the ability to enforce the mortgage because of a defect in the chain of assignments and, as a result, Marix's subsequent attempt to enforce the

mortgage violated the FDCPA.

Plaintiffs' claim should be dismissed for several reasons. First, Plaintiffs fail to plead sufficiently facts to support the claim that Marix is a debt collector, which is fatal to their claim under the FDCPA. Second, none of the allegations state a claim that the assignments are invalid. As a result, Plaintiffs cannot establish that there was no present right to possess the property at the time Marix sent the notices of default to Plaintiffs.

## FACTS AS ALLEGED

On or about October 25, 2006, Plaintiffs signed a note payable to Zurich Mortgage Solutions, LLC ("Zurich") and a mortgage granting Zurich a security interest in property located at 380 Pippin Orchard Road, Cranston, Rhode Island (the "Property"). *Complaint*, ¶¶ 1, 11, 16; *Mortgage*, a copy of which is attached to the Complaint as Exhibit A and is attached hereto as **Exhibit A**.

On September 14, 2007 two assignments of the Mortgage were recorded in the Land Evidence Records for the City of Cranston. The first assignment transferred the Mortgage "TOGETHER with the note or notes therein described or referred to" from Zurich to "American Residential Equities." *First Assignment*, a copy of which is attached to the Complaint as Exhibit B and is attached hereto as **Exhibit B**. The second assignment transferred the Mortgage "together with certain note(s) described therein" from "American Residential Equities" to "GMAC Mortgage LLC" ("GMACM"). *Second Assignment*, a copy of which is attached to the Complaint as Exhibit C and is attached hereto as **Exhibit C**.

On or about May 4, 2010, GMACM transferred the Mortgage "together with certain note(s) described therein" to "American Residential Equities, LIX, LLC." *Third Assignment*, a copy of which is attached to the Complaint as Exhibit D and is attached hereto as **Exhibit D**.

The Assignment was recorded in the Land Evidence Records for the City of Cranston on November 10, 2010.

By letters dated March 5, 12, and 19, 2012, Marix, the then-loan servicer, informed Plaintiffs that Marix was servicing the loan, that Plaintiffs were in default on the "Note and Security Instrument," and that if Plaintiffs did not pay the full amount due with a certain time period, the loan would be accelerated and the remedies provided for in the "Note and Security Agreement" may be invoked, "including but not limited to the foreclosure sale of the [P]roperty." *Default Letters*, copies of which is attached to the Complaint as Exhibits E, F, and G and are attached hereto as **Exhibit E**.

By "Notice of Acceleration of Mortgage Loan" dated April 18, 2012, Orlans Moran PLLC ("Orlans") represented to Plaintiffs that it "represented Marix . . ., the servicer . . .", that the "Mortgage Loan is in default," that Orlans had been instructed "to institute foreclosure proceedings on the Mortgage," informed Plaintiffs that the loan had been accelerated and of the amount due, and that Plaintiffs had thirty days to dispute the validity of the debt. *Notice of Acceleration of Mortgage Loan*, a copy of which is attached to the Complaint as Exhibit H and is attached hereto as **Exhibit F**.

On or about December 19, 2012, Plaintiffs filed the Complaint.

## ARGUMENT

"In order to prevail on an FDCPA claim, a plaintiff must prove that: 1) the plaintiff has been the object of collection activity arising from consumer debt, 2) the defendant is a debt collector as defined by the FDCPA, and 3) the defendant has engaged in an act or omission prohibited by the FDCPA." Halsey v. Litton Loan Servicing, No. 12-CV-511-PB, 2013 WL

3754919, at *3 (D.N.H. July 13, 2013) (Barbadoro, J.) (internal quotations and citations omitted). Under the FDCPA, a "debt collector" is defined as:

> Any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). The term "debt collector" excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). As a result, where a plaintiff alleges that a loan servicer engaged in conduct in violation of the FDCPA, she is required to plead that her debt was in default at the time the defendant began servicing the loan; a failure to do so is fatal to the plaintiff's claim. See Brumberger v. Sallie Mae Serv. Corp., 84 Fed. Appx. 458, 459 (5th Cir. 2004) (affirming dismissal of FDCPA claim against student loan servicer because "[b]y its plain terms the FDCPA does not apply" absent an allegation that plaintiff "was in default at the time [the loan servicer] began servicing his loans"); Edmond v. Am. Edu. Serv., No. 10-0578, 2010 WL 4269129, at *5 (D.D.C. Oct. 28, 2010) (Bates, J.) (granting motion to dismiss on plaintiff's FDCPA claims because "[a]bsent an allegation that plaintiff's loan was in default when [the loan servicer] acquired it, [the loan servicer] is not a debt collector and is not subject to the FDCPA"); 15 U.S.C. § 1692a(6)(F).

Here, Plaintiffs have not alleged that their debt was in default at the time Marix began servicing the loan. They have not, therefore, alleged sufficiently that Marix is a debt collector. As a result, Plaintiffs cannot maintain an FDCPA claim against Marix.

Even if Marix were a debt collector, Plaintiffs' FDCPA claim still fails. Plaintiffs' claim that Marix violated 15 U.S.C. § 1692f(6), which prohibits a debt collector from " [t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if []

there is no present right to possession of the property claimed as collateral through an enforceable security interest." "A court should look to state law requirements to determine whether there was a present right to possession under the FDCPA." Speleos v. BAC Home Loans Servicing, L.P., 824 F. Supp. 2d 226, 233 (D. Mass. 2011); see also Lowenstern v. Residential Credit Solutions, No. CA 11-11760-MLW, 2013 WL 697108 (D. Mass. Feb. 25, 2013) (Wolf, J.) ("[I]n order to state a viable claim under § 1692(f)(6) of the FDCPA, a plaintiff must allege that defendant initiated foreclosure proceedings without the requisite possessory interest under state foreclosure law."). Thus, the question is whether Marix took or threatened to take any action to foreclose the Property when there was no present right to possess it. See id.

Plaintiffs allege that there was no present right to possession under the FDCPA because the Assignments are invalid. But none of Plaintiffs' arguments have merit.

***First***, Plaintiffs claim that the First and Second Assignments are invalid because American Residential Equities "did not exist." This allegation is unsupported by any facts, and the e Court should not accept Plaintiffs "bald assertions" and "unsupportable conclusions." See Chongris v. Board of Appeals of Town of Andover, 811 F.2d 36, 37 (1st Cir.1987).

To the extent Plaintiffs attempt to allege that the assignments simply failed to include the corporate designation (for example, "Inc." or "LLC"), this would not make the assignments invalid. The First Assignment was assigned to "American Residential Equities" and the Second Assignment was assigned from "American Residential Equities" to GMAC by its "[a]uthorized signatory," Jeffery Kirsch. There is no break in the chain of title.

***Second***, Plaintiffs allege that the assignments are invalid because there was no consideration given any of the assignments. This is a conclusory, "naked assertion" without "factual enhancement," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557, 562 (2007), based

on nothing more than sheer speculation. As a result, it is insufficient to support a claim that the assignments are invalid. See Kiah v. Aurora Loan Servs., LLC, No. 10-40161, 2011 WL 841282, at *6 (D. Mass. Mar. 4, 2011) (Saylor, J.) ("Plaintiff further contends that the assignment of mortgage was without consideration and is therefore void. Under the circumstances presented here, this is nothing more than sheer speculation, with no specific facts to support it. Furthermore, and in any event, it is difficult to see why plaintiff has standing to assert such a claim, and how in any event he has suffered a compensable injury if the consideration was not paid. Such implausible allegations are insufficient to survive a motion to dismiss."). Moreover, this allegation is expressly contradicted by the Assignments themselves which states that the Assignments were given "For Value Received" or "For good and valuable consideration." *First, Second and Third Assignment*; see also Phillips v. Potter, 7 R.I. 289 (1862) (party estopped by claiming want of consideration where consideration is recited in instrument).

***Third***, Plaintiffs also maintain that the Third Assignment is invalid because the signatory, Jeffrey Stephan ("Stephan"), was a "robo-signer." First, Plaintiffs have "not defined the term or cited any authority showing it has any legal significance. . ." Wilson v. HSBC Mortgage Servs., Inc., 13-1298, 2014 WL 563457, at *3 (1st Cir. Feb. 14, 2014). Under such circumstances, this Court should "decline to speculate on the meaning [Plaintiffs] ascribe to the term" and conclude, as the First Circuit in Wilson did, that "the bare allegation of 'robo-signing' does nothing to undermine the validity of the [] Assignment . . . ." Id. Second, to the extent Plaintiffs claim that Stephan did not review the Third Assignment before executing it, they can provide no legal support of the proposition that even if Stephan were a "robo-signer," it would invalidate the assignment. See Butler v. Deutsche Bank Trust Co. Americas, No. CIV. A. 12-10337-DPW,

2012 WL 3518560 (D. Mass. Aug. 14, 2012) ("Butler alleges that Jeffrey Stephan, who signed the first and second assignments, is a known robo-signer. Butler alleges that Stephan 'would glance at a borrower's name, the debt owed and a few other numbers, but simply assumed most of the information in the files was correct.' Butler has not explained how, even if this were the case, it would invalidate the assignments."). Indeed, at least one judge in this circuit has found that allegations that a signatory to assignment was a "well known robo-signer" and that 50 states attorneys general were investigating the use of "robo-signers" was insufficient to challenge the validity of a mortgage assignment. Peterson v. GMAC Mortgage, LLC, No. 11-11115-RWZ, 2011 WL 5075613, at *5 (D. Mass. Oct. 25, 2011) (Zobel, J.).[1]

***Finally***, Plaintiffs appear to raise two additional challenges to the validity of the assignments. First, Plaintiffs claim that First Assignment is invalid because it was not recorded until ten (10) months after it was executed. *Complaint*, ¶ 17. But there is no requirement under Rhode Island law that an assignment of mortgage be recorded to be effective. To the contrary, under R.I. Gen. Laws § 34-11-24, entitled "Effect of assignment of mortgage," an assignment of mortgage substantially following the statutory form, "when duly executed," has "the force and effect of . . . transferring . . . to the assignee . . . [the] mortgage deed . . . and all the right, title and interest of the mortgagee." Id. Nor does R.I. Gen. Laws § 34-11-24 mandate recording. This statute provides that:

[1] In fact, this Court has previously opined that plaintiffs are not likely to succeed on such claims. In re Mortgage Foreclosure Cases, No. 11-MC-88-M-LDA, 2013 WL 4735638, at *3 (D.R.I. Sept. 3, 2013) (McConnell, J.) ("With regard to Plaintiffs' argument that an assignment is invalid if signed by an unauthorized individual, a 'robo-signer,' with a false title of vice president, the First Circuit emphasized in Culhane that the statute 'neither places restrictions on who may be elected as an officer of the assignor nor imposes special requirements (say, regular employment) on who may serve as a vice president of an assignor corporation.' Id. at 294. As such, '[w]hile MERS's practice of appointing employees of member firms as certifying officers can be disparaged on policy grounds, such policy judgments are for the legislature, not the courts.' Id. These courts' consistent rulings on Rhode Island state law and upholding the MERS process appear to indicate that Plaintiffs are not likely to succeed on the legal issues that are common to most of the cases on this consolidated docket.").

> Every conveyance of lands . . . by way of mortgage . . . for any term longer than one year . . . shall be void unless made in writing duly signed, acknowledged as hereinafter provided, delivered, and recorded in the records of land evidence in the town or city where the lands, tenements or hereditaments are situated; provided, however, that the conveyance, if delivered, as between the parties and their heirs, . . . or those having notice thereof, shall be valid and binding though not acknowledged or recorded.

R.I. Gen. Laws § 34-11-1. By its plan language, this statute does not mandate recording, "but only addresses the legal effect of recording with respect to third parties if a mortgagee chooses to record a mortgage or assignment. Reading the entire statute as a whole shows that certain unrecorded conveyances, are in fact valid, thus acknowledging that all conveyances need not be recorded." Town of Johnston v. MERSCORP, Inc., 950 F. Supp. 2d 379, 392-83 (D.R.I. 2013).

Moreover, "courts have held that unrecorded mortgages are valid in Rhode Island." Town of Johnston, 950 F. Supp. 2d at 383 (collecting cases). If a mortgage need not be recorded, there cannot, therefore, be a requirement that an assignment of a mortgage be recorded in order to be effective. Id. (holding that Rhode Island law did not require the recording of an assignment of mortgage). More importantly, the Assignment *was* recorded.

Second, Plaintiffs claim that the Third Assignment is invalid because it is dated May 4, 2010 but it was not notarized until May 5, 2010. Just as there is no recording requirement under Rhode Island law, there is also no requirement that an assignment be notarized. Nowhere in R.I. Gen. Laws § 34-11-24 does it require that an assignment of mortgage be notarized (or acknowledged) in order to be effective. Moreover, under R.I. Gen. Laws § 34-11-1, a conveyance of an interest in land is not invalid (as between the parties and those with notice)

even if it is not acknowledged.[2] Carrozza v. Carrozza, 944 A.2d 161, 165 (R.I. 2008) ("the fact that the deed was not acknowledged does not affect its validity").

The assignments of the mortgage were not, therefore, invalid. As a result, there was a present right to possess the Property after Plaintiffs defaulted, and Marix, as servicer, had the authority to notify Plaintiffs of the default and that a failure to cure may result in foreclosure. Accordingly, the FDCPA claim against Marix should be dismissed.[3]

Defendant
MARIX SERVICING, LLC
By its attorneys,

*/s/ Brian S. Grossman*

Brian S. Grossman, Esq. RI Bar ID 7308
ANDERSON & KREIGER LLP
One Canal Park, Suite 200
Cambridge, MA 02141
Direct: 617-621-6682
bgrossman@andersonkreiger.com

Date: March 5, 2014

[2] The fact that the Third Assignment was dated May 4, 2010 but notarized on May 5, 2010, does not lead to the conclusion that Stephan did not appear before the notary on May 5, 2010. Rather, the logical conclusion is that Stephan signed the Third Assignment on May 5, 2010 in the presence of the notary, but that the Third Assignment was simply dated a day earlier.

[3] Moreover, Marix cannot be liable for any violation of the FDCPA based on the April 18, 2012 notice of acceleration because the notice was sent to Plaintiffs by Orlans, not Marix.

CERTIFICATE OF SERVICE

I, Brian S. Grossman, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non -registered participants on March 5, 2014.

*/s/ Brian S. Grossman*
Brian S. Grossman, Esq.