# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

MICHELE PERRETTA AND
ANNA PERRETTA

      VS.                                                             C.A. NO.: 12-927

AMERICAN RESIDENTIAL
EQUITIES LIX, LLC, ALIAS,
STATEBRIDGE COMPANY, LLC,
ALIAS, MARIX SERVICING, LLC, ALIAS
WESTBOURNE CAPITAL, LLC,
AMERICAN RESIDENTIAL
EQUITIES, LLC, ALIAS,
ACQURA LOAN SERVICING, ALIAS,
FCI LENDER SERVICES, INC, ALIAS
NOTE CAPITAL GROUP, INC. ALIAS
AND JOHN DOE, ALIAS

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, DAMAGES, BREACH OF CONTRACT, VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, DEMAND FOR INJUNCTIVE RELIEF

The Plaintiffs, Michele Perretta and Anna Perretta, by their Attorney complain of Defendants follows:

## INTRODUCTION AND JURISDICTION

1. The Plaintiffs, Michele Perretta and Anna Perretta, are residents of the State of Rhode Island with an address of 380 Pippin Orchard Road, Cranston, Rhode Island. The Plaintiffs, Michele Perretta and Anna Perretta own said real estate located at 380 Pippin Orchard Road, Cranston, Rhode Island.
2. Defendant John Doe is any entity, which has an interest in the Plaintiffs' mortgage and/ or promissory note.

3. Defendant American Residential Equities, LIX, LLC,( "ARE LIX") is a Delaware limited liability company. It has claimed to own Plaintiffs' mortgage and note.

4. Westbourne Capital, LLC ("Westbourne") is a Utah limited liability company, which claimed to own Plaintiffs' note and mortgage. It at one time had a contractual agreement with Residential Credit Solutions, Inc. a loan servicer, which serviced Plaintiffs' loan commencing April 1, 201 It is a company, which in a lawsuit filed in the United District Court for the Central Division of California on November 4, 2011 against Residential Credit Solutions, Inc., referred to itself as a company which specializes in acquiring, managing and liquidating undervalued first mortgage loans. It never was assigned Plaintiffs' mortgage nor was ever transferred Plaintiffs' note.

5. Defendant Statebridge Company, LLC ("Statebridge") is a Colorado limited liability company, which claims to be a former loan servicer for Plaintiffs' note and mortgage. It is a debt collector, which collects debts on behalf of investors and owners of mortgages and notes. It obtained the servicing rights to Plaintiffs' note and mortgage, when Plaintiffs' note and mortgage was claimed to be in default by the prior servicer. At all times when it has communicated with the Plaintiffs, it has referenced to itself as a debt collector and has sent numerous notices to the Plaintiffs indicating that it was a debt collector. On June 12, 2012, it sent its initial letter to Plaintiffs indicating that it was the servicer for their mortgage. In that letter, it stated "Statebridge Company, LLC is a debt collector and is attempting to collect a debt."

6. Acqura Loan Servicing ("Acqura"), also known as Vantium Capital, Inc, is a Delaware corporation, which claimed to be the loan servicer for the Plaintiffs' mortgage at a prior date. It is a debt collector, which collects debts on behalf of investors and owners of mortgages and notes. It obtained the servicing rights to Plaintiffs' note and mortgage, when Plaintiffs' note and mortgage was claimed to be in default by the prior servicer. In all its communications to the Plaintiffs, it identified itself as a debt collector. It transferred servicing rights to the Plaintiffs' loan on April 1, 2011 to Residential Credit Solutions, Inc.

7. Defendant Marix Servicing, LLC ("Marix"), is a Delaware limited liability company, which on April 18, 2006, through its attorney, claimed to

2

be the loan servicer for the Plaintiffs' mortgage on behalf of American Residential Equities Lin, LCC.  It is an out of state limited liability company. Defendant Marix on May 5, 2012, May 12, 2012, and May 19, 2012 claimed to be the loan servicer for the Plaintiffs' mortgage on behalf of Westbourne. It is a debt collector, which collects debts on behalf of investors and owners of mortgages and notes.  It obtained the servicing rights to Plaintiffs' note and mortgage, when Plaintiffs' note and mortgage was claimed to be in default by the prior servicer. In all its communications to the Plaintiffs, it identified itself as a debt collector in each letter that it sent to the Plaintiffs. For example on December 14, 2011, it sent a hazard Insurance Warning Letter to the plaintiffs, in which it stated:

This communication is from a debt collector but does not imply that Marix Servicing, LLC is attempting to collect money from anyone whose debt has been discharged pursuant to (or who is under the protection of the Bankruptcy laws of the United States.)

9.     On December 8, 2011 Marix sent a letter to the Plaintiffs in which it stated "This is an attempt to collect a debt and any information obtained will be used for that purpose."  At all times while acting as a loan servicer, Marix held itself out to be a debt collector.On June 4, 2012 it sent a letter incicating to the Plaintiffs that:"Marix Servicing, LLC is a licensed mortgage servicer and debt collector". Marix ceased serving as loan servicer for Plaintiffs loan on June 1, 2012.

9.     On October 25, 2006, Plaintiffs executed a note and mortgage to Zurich Mortgage Solutions, LLC ("Zurich") .  This entity was a broler, which was paid funds from investors to close the loan in its own name.  Tus it was a purported Mortgage Company which was the nominal originator of Plaintiffs' loan.  It was a subprime lender and it no longer exists. It closed loans in its own name so that the actual funder of its loans would be exempt from any potential RESPA or Truth in Lending ("TILA") liability

10.    Note Capital Group, Inc. is an out of state corporation, which claims to have purchased  the Plaintiffs' mortgage and note on or about July 30, 2013, pursuant to an alleged assignment dated July 20, 2013. This assignment was prepared by Pamela A. Perrot, on behalf of Westbourne Capital, LLC. She has claimed to be an employee of American Residential Equities.

3

11. FCI Lender Services, Inc. is a California corporation, which claims to be the loan servicer for the Plaintiffs' mortgage. It is a debt collector, which collects debts on behalf of investors and owners of mortgages and notes. It obtained the servicing rights to Plaintiffs' note and mortgage, when Plaintiffs' note and mortgage was claimed to be in default by the prior servicer. In all its communications to the Plaintiffs, it identified itself as a debt collector in each letter that it sent to the Plaintiffs.

12. The Court has subject matter jurisdiction pursuant to 28 U.S.C. Sec. 1332 (diversity jurisdiction) as the matter in controversy exceeds $75,000.00 exclusive of interest and costs, and because the Defendants are foreign corporations based outside of the State of Rhode Island. The mortgage that various defendants in this case have sought to enforce has a value of $971,000.00. The object of the litigation, is the mortgage of the Plaintiffs, which various defendants seek to enforce. The Plaintiffs' home is worth approximately $770,000.00.

13. The subject matter of this complaint is proper to invoke the Equitable Jurisdiction of this Court. All of the parties named herein have sufficient minimum contacts with the State of Rhode Island to render them subject to its jurisdiction.

14. This Court has subject matter jurisdiction over the matters in this complaint pursuant to the following statutes:

    a. The provisions of 28 USC Sec. 2201, grant this Court jurisdiction over questions of law and equity. The Plaintiffs are asking this Court, inter alia, to restrain the certain defendants from taking adverse action on the subject property owned by the Plaintiffs at 380 Pippin Orchard Road, Cranston, Rhode Island at a foreclosure sale on December 21, 2012.

    b. The provisions of the Declaratory Judgment Act, 28 USC Sec. 2201 et seq., grant this Court jurisdiction to determine certain legal questions relating to the property rights of the Plaintiffs and the Defendants under certain contracts, assignments, powers of attorneys, and deed. Plaintiffs ask that the alleged assignment of mortgage be declared invalid and void ab initio and that this Court decide that the mortgage and note are not

held by any of the Defendants and that said Defendants lack standing to enforce the note or to foreclose on the mortgage.

c.  The provisions of the Fair Debt Collection Practices Act, ("FDCPA"), 15 USC 1692 et seq. and more particularly 15 USC 1692f (6), grant subject matter jurisdiction to this Court over actions of Statebridge which were taken or threatened to take a non-judicial action to effect dispossession of Plaintiffs of their property when there is no present right to possession of the property claimed as collateral through an enforceable security interest.

d.  The provisions of the Fair Debt Collection Practices Act, ("FDCPA"), 15 USC 1692 et seq. and more particularly 15 USC 1692f (6), grant subject matter jurisdiction to this Court over actions of Marix which were taken or threatened to take a non-judicial action to effect dispossession of Plaintiffs of their property when there is no present right to possession of the property claimed as collateral through an enforceable security interest.

e.  The provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), of the Real Estate Settlement Procedures Act, ("RESPA") and the Truth in Lending Act, 15 U.S.C. §§ 1601 et. seq. ("TILA") grant this Court jurisdiction.

f.  This Court also has jurisdiction as this is also an action is also filed to enforce the amendments to Regulation Z of the Truth in Lending Act, codified as Section 12 CFR part 1026, specifically Section 1026.36(c)(3) of Regulation Z. These Regulations became effective on January 10, 2014.

## COUNT I
## DECLARATORY JUDGMENT

15. On October 25, 2006, the Plaintiffs executed a mortgage and promissory note to Zurich.

16. On about November 24, 2006, American Residential Equities, LLC prepared a purported assignment of the beneficial interest of the mortgage

together with the note from Zurich to American Residential Equities, a non-existent entity indicating that this transfer was for the value received. This document was prepared and executed in order to create the fiction that American Residential Equities owned the mortgage and note.

18. This alleged assignment was not recorded until September 14, 2007. It was not dated and the claimed notary date was on November 28, 2006. An alleged employee of American Residential Equities, Pamela Perrot, has indicated that the mortgage was not available to obtain recording information for the assignment. American Residential Equities never purchased this mortgage, but only serviced it.

19. This alleged assignment claimed to assign what it referred to as only the beneficial interest of the mortgage and note not the mortgage itself. The beneficial interest of the mortgage is the note, not the mortgage. Thus this alleged assignment did not comply with the provisions of RIGL 34-11-24 and conveyed nothing to American Residential Equities.

20. On about November 14, 2006, before American Residential Equities had received an alleged assignment, American Residential Equities prepared another purported assignment of mortgage and note from American Residential Equities to GMAC Mortgage, LLC ("GMAC") indicating that this transfer was for value received. However this alleged assignment was void and in fact impossible because on November 14, 2006, the first alleged assignment had not yet been executed and the assignor, which did not exist in that name, owned nothing to assign.

21. On November 14, 2006 American Residential Equities did not exist as an entity under that name and thus could not convey anything. No consideration was paid by GMAC Mortgage, LLC for the note or mortgage to a non-existent entity because it did not purchase either. Neither the mortgage nor note was delivered to GMAC, which was a loan servicer only. It never owned the note or mortgage. It serviced various mortgages which had been sold to investors and which had been securitized by American Residential Equities. LLC related entities. This alleged assignment was void because the assignor owned nothing to assign.

22. Defendants American Residential Equities and the investor, which sought to purchase the loan needed to create a purported assignment. American Residential Equities, Acqura, a subsequent servicer and GMAC

Mortgage, LLC were aware of all these facts. This document conveyed nothing, as American Residential Equities did not exist and GMAC never owned the mortgage.

23. Despite the fact that it had never been conveyed either the note or the mortgage, on about May 4, 2010, Defendants Acqura and American Residential Equities and GMAC prepared a fraudulent purported assignment of mortgage and note from GMAC Mortgage, LLC to American Residential Equities LIX, LLC indicating that this transfer was for good and valuable consideration. However this alleged assignment was ineffective, invalid and void.

24. On May 4, 2010 GMAC owned nothing to convey and American Residential Equities LIX, LLC did not pay any consideration to GMAC.

25. The alleged assignment was dated May 4, 2010 and then notarized on May 5, 2010. It was not duly executed pursuant to Rhode Island law.

26. GMAC which never owned the mortgage or note, owned nothing to assign.

27. GMAC and American Residential Equities, LLC were in litigation against each other regarding servicing rights at this time and this document was not executed on this date as the parties were in a dispute over these rights. Thus it was not duly executed pursuant to RIGL 34-11-24.

28. Jeffrey Stephan was an employee of a GMAC affiliate and lacked authority to sign any documents on behalf of GMAC. He has admitted in depositions and in testimony that his named was affixed to documents by him and other fellow employees.

29. Jeffrey Stephan and GMAC have been sanctioned by the maine Supreme Court and the United sates District Court for the District of Maine for signing documents without authority.

30. Jeffrey Stephan did not sign the alleged assignment of mortgage. Plaintiffs can cite numerous occasions in which a different version of his signature has appeared on document that vary from the signature on this document. This indicates that his signature is not genuine. For example he has signed document

31.     Jeffrey Stephan has purported to be an officer of Mortgage Electronic Registration Systems, Inc. ("MERS") on innumerable occasions.  However he has never been appointed as an officer of MERS by the ERS Board of Directors.  The Bylaws of MERS which were adopted when MERS was incorporated on January 1, 1999 mandated that only the Board of Director could appoint MERS officers.

32.    Jeffrey Stephan has testified that he signed as many as 5000 documents per week with his own name or that of other persons. He and GMAC were sanctioned by the Supreme Court of Maine and the United States District Court for the District of Maine for signing false documents.

33.     Jeffrey Stephan's name is affixed to several hundred thousand documents, including assignment of mortgages and promissory notes.  His name is affixed to the purported assignment of mortgage, even though GMAC never owned the Plaintiffs' mortgage or note.  Despite the false signature on the document indicates GMAC received value for the alleged assignment to ARE LIX. This statement was a false statement, because GMAC never purchased or sold any mortgages to or from any American Residential Equities company.

34.     Due to the problems with the assignment, GMAC as a loan servicer had the job of correcting defective mortgage transactions, such as Plaintiffs' mortgage. There was no assignment which validly conveyed the mortgage and no transfer of the note. Thus a robo-signer such as Jeffrey Stephan was needed.  GMAC was sanctioned by the Office of the Comptroller of the Currency and the Federal Reserve Board and entered into a settlement with the Attorneys Generals of forty nine states to remedy this type of fraudulent practice.

35.     However this manipulation of documents by employees of affiliate of loan servicers, such as Jeffrey Stephan in this case were occurring in 2010. Parties such as American Residential Equities, which had arranged for sales of loans, without valid documentation needed someone to make believe that he was an officer of the owner of the note and the mortgage.  This was the beginning of robo-signing, where persons such as Jeffrey Stephan signed this document or allowing his mark to be placed on this document to purportedly transfer title, when in fact, GMAC never owned this mortgage

or note. He also had no idea what he was signing nor was he an agent for GMAC.

36. Jeffrey Stephan will not allow himself to be deposed. His job was to affix his mark and that of other GMAC affiliates employees on alleged assignments, because when the loans were actually sold, there was a failure in the process. As a result, Plaintiffs' loan became what is called a scratch and dent loan, namely a loan without any real documentation.

37. Plaintiffs' loan lacks a valid mortgage assignment. It also lacks any valid endorsements from the originator to ARE LIX. Due to litigation between Zurich and ARE, there was no endorsement of the note by the originator. The Plaintiffs' loan was table funded by a third party not Zurich and was funded originally by a warehouse lender. This means that the Plaintiffs' loan was funded by a lender for Zurich and ARE, which had no funds of its own to fund the loan. Thus a warehouse lender was used while the securitizer, ARE, was seeking investors to buy the loan.

38. This process resulted in there being the need to have the note endorsed in blank so as to allow the warehouse lender to hold the note as security for the transaction which it funded. Once ARE found investors and created ARE LIX, the interim lender merely gave the note back to ARE or Zurich and in the normal course, the note and mortgage would have been endorsed and assigned over to the respective parties in the securitization, as soon as the process was funded by investors. However the note was never endorsed in blank, nor was it endorsed at all. The alleged allonges conveyed nothing because they were photocopies of the note.

39. This process involved a Seller, a depositor and a special purpose vehicle which held the loans in a pool and sold certificates or other indicia of ownership in the pool of these loans.

40, However there was a problem in that there was a defect with the mortgage assignment process and the note had never been endorsed by Zurich. ARE had investors for the loans, but due to a dispute with Zurich, the note had not been endorsed. Thus Jeffrey Kirsch, the President of the purported ARE, endorsed the note to his own company, even though he lacked authority and was not an agent for Zurich.

41. The note thus had different loan servicers, such as Acqura, GMAC trying to create documents in order to "correct" the missing endorsements and the missing and defective assignments. Thus employees of loan servicers such as GMAC, put their names on allonges, which were not affixed to the note. Thus the note has never been transferred or negotiated from Zuruch.

42. Pursuant to the Uniform Commercial Code of Rhode Island, as adopted by Rhode Island an allonge is effective only it is affixed to the note. An employee of Acqura has testified that the allonges were prepared by different people and that she contended that they were not affixed. Pursuant to RIGL 6A-3-204, a note can be transferred by negotiation only if endorsed and possessed. An endorsement on a document that was not affixed to the note is a void endorsement, which does not transfer ownership of the note. The note of the Plaintiffs has not been endorsed from Zurich.

43. As a result of the scratch and dent note and mortgage and the failure to endorse the note or transfer the mortgage, ARE was not able to enforce the note or the mortgage and thus effectively, no party is entitled to enforce the note or the mortgage.

44. The note at one time was in the possession of Bank of New York Mellon as custodian and later in the possession of JP Morgan Chase Bank, N.A. Thus it was intend to be securitized to investors at least twice. Only national banks such as BONY or Chase can be custodians. The records of those entities indicate that the alleged endorsements on the note were only the work of loan servicer employees , who claimed to sign an allonge on behalf of GMAAC to ARE LIX, even though GMAC never woned the note or mortgage.

45. At some point in time ARE and ARE LIX decided to sell whatever they claimed to possess in regard to the Plaintiffs' loan. An entity named Westbourne Capital claims to have purchased the loan. A purported employee of ARE, Pamela Perrot who now works for Westbourne, which claims to purchase loans. However there is no chain of title of the note or the mortgage to Westbourne or ARE LIX or ARE. Marix was attempting to foreclose on behalf of Westbourne at the same time as Statebridge was seeking to foreclose on behalf of ARE LIX.

46. Another servicer, named Green Tree Servicing, at this point in time became a loan servicer, involved in the process, even though it never notified the Plaintiffs of any transfers of servicing rights as required by RESPA.

47. Thus a default notice was sent to Plaintiffs on behalf of Westbourne as a mortgagee and to them on behalf of ARE LIX and also on behalf of ARE Lin, by the same law firm, Orlans Moran, who worked for years with GMAC loans.

48. Westbourne and American Residential Equities LIX do not own the note or the mortgage nor have valid transfers and assignments of each occurred.

49. As a result, the Defendants lack standing to enforce the note or the mortgage.

## COUNT II
## BREACH OF CONTACT

50. Paragraph 1- 49 are incorporated by reference.

51. Plaintiffs never received any default letter from the holder and owner of the note and of the mortgage and any alleged foreclosure proceedings were invalid because no notice was sent to the Plaintiffs pursuant to law and to the terms of the mortgage. Rhode Island law and the terms of the mortgage mandate that prior to commencing a foreclosure by a default letter and power of sale, a party actually owns the note and the mortgage by way of transfer and/or assignment.

52. None of the provisions of the mortgage were complied with by the Defendants. Before an alleged acceleration of the loan was declared; the Lender was required to comply with paragraph 22 of the Mortgage. None of the provisions of paragraph 22 of the mortgage were complied with before an alleged acceleration of the loan was declared; the Lender was required to specify:

    a. the default;

  b.  the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;

  c.  that failure to cure the default on or before the date specified in the Notice may result in the acceleration and the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

53. Paragraph 22 of the mortgage, which contains conditions for the exercise of the statutory power of sale, reads as follows:

> Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.
>
> If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in

the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

54. Specifically, the provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage. There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above. No default letter was sent to Plaintiffs by the owner of the Note and the Mortgage in conformity with the terms of the Mortgage. A purported Notice of Acceleration, dated July 10, 2012, was sent to the Plaintiffs by Statebridge on behalf of American Residential Equities LIX, LLC. This notice did not comply with the terms of the mortgage and as a result the Defendants were not authorized to accelerate nor notice the property for sale. In fact the Defendants have not sent a valid notice of default under the note and the mortgage which is also a prerequisite to exercise the power of sale pursuant to the mortgage and Rhode Island law.

55. Nevertheless, the Defendants advertised a foreclosure sale in the Providence Journal and have scheduled a foreclosure sale for December 21, 2012, without declaring the Plaintiffs in default, and without accelerating the loan and without properly exercising the statutory power of sale. This action has cause harm to the Plaintiffs through a publication of an unauthorized sale, thereby causing damages to the Plaintiffs.

56. The failure of Statebridge and American Residential Equities LIX to comply with the terms of the mortgage constitutes a breach of contract. Pursuant to the provisions of Rhode Island law, the Plaintiffs are entitled to attorney fees and costs for the prosecution of this action due to the fact that the Defendants have committed a breach of contract in regard to the mortgage by foreclosing without contractual authority to do so.

## COUNT III
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 USC 1692f (6)

57. Paragraphs 1-56 are incorporated by reference.

58. The Plaintiffs are consumers as defined by 15 USC 1692 et seq. Marix is a debt collector as defined by 15 USC 1692 et seq. Marix, since December 18, 2011, has committed several violations of the FDCPA, 15 USC 1692f (6) and is liable to the Plaintiffs for compensatory damages, statutory damages, and attorney fees and costs for violations.

59. Marix has used several unfair and unconscionable means to collect or attempt to collect a debt against the Plaintiffs.

60. Marix, allegedly on behalf of American Equities LIX, LCC and also Westbourne Capital, LLC, has threatened to commence and has claimed to have commenced a non-judicial foreclosure to effect dispossession of the Plaintiffs of their property even though neither American Residential Equities LIX nor Westbourne Capital, LLC had the present right to possession of the property claimed as collateral through an enforceable security interest.

61. Statebridge, allegedly on behalf of American Residential Equities LIX, LLC, scheduled a foreclosure for December 21, 2012 despite the fact that American Residential Equities LIX, LLC had no present right to possession of the property claimed as collateral through an enforceable security interest.

62. The facts alleged in this complaint in Count I establish that American Residential Equities LIX, LLC, did not have present right to possession of the property claimed as collateral through an enforceable security interest, nor any of the entities Statebridge alleged to be acting on behalf of.

63. On March 05, 2012 Marix, allegedly on behalf of Westbourne Capital, LLC, caused to be sent to the Plaintiffs a purported notice of default, with full knowledge that Westbourne Capital LLC did not have any present right to possession of the property claimed as collateral through an enforceable security interest.

64. On March 12, 2012 Marix, allegedly on behalf of Westbourne Capital, LLC, caused to be sent to the Plaintiffs a purported notice of default, with full knowledge that Westbourne Capital LLC did not have any present right to possession of the property claimed as collateral through an enforceable security interest.

65. On March 19, 2012 Marix, allegedly on behalf of Westbourne Capital, LLC, caused to be sent to the Plaintiffs a purported notice of default, with full knowledge that Westbourne Capital LLC did not have any present right to possession of the property claimed as collateral through an enforceable security interest.

66. On April 18, 2012, Marix, through its attorneys, allegedly on behalf of American Equities Lin, LCC, which was another wrongly named entity, had caused to be sent to the Plaintiffs a purported notice of acceleration with full knowledge that American Equities Lin, LCC did not have any present right to possession of the property claimed as collateral through an enforceable security interest.

67. On July 10, 2012, Statebridge Company, LLC, allegedly on behalf of American Residential Equities LIX, LLC, had caused to be sent to the Plaintiffs a purported notice of acceleration with full knowledge that American Residential Equities LIX, LLC did not have any present right to possession of the property claimed as collateral through an enforceable security interest.

68. On July 13, 2012, Statebridge, LLC has caused to be sent to the Plaintiffs a purported notice of foreclosure and sale, with full knowledge that American Residential Equities LIX, LLC did not have any present right to possession of the property claimed as collateral through an enforceable security interest.

69. In its original communication with the Plaintiffs, Statebridge failed to comply with the provisions of 15 U.S.C. 1692(g)(a). Thus any communication with the Plaintiffs have been violations of the FDCPA.

70. Each action of Statebridge, LLC and Marix described above constitutes a separate violation of the FDCPA for which American Residential Equities LIX, LLC and Marix are both liable.

71. The purported foreclosure action and all actions to seek to foreclose on the property have occurred within one year of the filing of the original complaint.

72. Plaintiffs have entitled to statutory damages, actual damages, punitive damages, and attorney fees and costs for each violation of the FDCPA.

# IV
# INJUNCTIVE RELIEF

73. Paragraph 1- 72 are incorporated by reference.

74. The Plaintiffs require a Mandatory Injunction and Preliminary Injunction against all defendants to cease any attempts to commence or continue an illegal foreclosure action of Statebridge and American Residential Equities LIX and/or Westbourne Capital LLC or FCI and Note Capital.

75. Westbourne and American Residential Equities LIX and Note Capital have no interest in the property, the mortgage or note and, thus have no standing to foreclose upon the mortgage of the Plaintiffs or to enforce the note or to assign the mortgage or transfer the note.

76. Plaintiffs are being irreparably harmed by the illegal collection actions of all the Defendants.

77. The Plaintiffs have no other remedy at law but to seek the relief requested herein. Equity favors the Plaintiffs as they have no adequate remedy at law.

# COUNT V
# COMPLAINT FOR DAMAGES

78. Paragraphs 1-77 are incorporated by reference.

79. On October 25, 2006, the Plaintiffs executed a promissory note in favor of Zurich in the amount of $971,750.00. The property is currently assessed by the Cranston Tax Assessor at $773,200.00.

80. The Mortgage contains language that provides for the Statutory Power of Sale only by the Lender in the event of a default on the note by Plaintiffs.

81. The mortgage does not include any language that a party that does not own the note and mortgage or an agent for the party that owns the note e may invoke the Statutory Power of Sale on its own behalf and not for the party entitled to enforce the note.

82. Neither the owner of the note and mortgage, nor any one acting on their behalf, ever invoked the statutory of sale in this matter.

83. Neither the owner of the note and mortgage, nor any one acting on their behalf, mailed a notice of sale to the Borrowers.

84. The owner of the note and mortgage nor any one acting on their behalf, never published the notice of sale.

85. The attempted Foreclosure Sale on December 21, 2012, which had been allegedly scheduled by American Residential Equities and Statebridge, was neither noticed by the holder and owner of the mortgage nor by the party entitled to enforce the Note, nor by any one acting on their behalf

86. Neither Statebridge, American Residential Equities LIX, Westbourne Capital, nor One Note are the owner of the note and mortgage in regard to this matter or have statutory authority to foreclose pursuant to RIGL 34-11-22.

87. Statebridge and American Residential Equities LIX, neither of which is the owner of the note and mortgage, have wrongly sought to commence an alleged foreclosure without contractual or statutory authority. Acqura sought to commence a foreclosure even though it lacked any authority to do so.

88. Statebridge, Marix, Acqura, Westvourne andARE LIX lacked standing to foreclose.

89. FCI and One Note lack standing to foreclose.

90. This claim is brought pursuant to the provisions of the Declaratory Judgment Act and as such fall within the jurisdiction of this Court.

91. This is a justiciable controversy and is appropriate for Declaratory Judgment pursuant to the act.

WHEREFORE, the Plaintiffs pray that this Court:

A. Issue a Declaratory Judgment determining that the note and mortgage is not vested in American Residential Equities LIX or Westbourne or One Note

B. Issue a Declaratory Judgment that the alleged assignment from Zurich to American Residential Equities is invalid and void ab initio as a matter of law and that Zurich assigned nothing to American Residential Equities.

C. Issue a Declaratory Judgment that the alleged assignment from American Residential Equities to GMAC is invalid and void ab initio as a matter of law and that ARE LIX assigned nothing to GMAC.

D. Issue a Declaratory Judgment that the alleged assignment from GMAC to ARE LIX is invalid and void ab initio as a matter of law and that GMAC assigned nothing to ARE LIX.

E. Issue a Declaratory Judgment that neither American Residential Equities LIX, Westbourne NOR One Note own or hold a secured claim in regard to the property owned by the Plaintiffs, located at 380 Pippin Orchard Road, Cranston, Rhode Island.

F. Issue a Declaratory Judgment that neither American Residential equities LIX nor Westbourne nor One Note own or hold the promissory note executed by Plaintiffs to Zurich.

G. Issue a Declaratory Judgment that any foreclosure proceedings previously conducted against the Plaintiffs has been invalid and that any costs and legal fees allegedly incurred by Defendants shall not be charged against the Plaintiffs.

H. Preliminarily and permanently restrain and enjoin all of the Defendants from commencing any further foreclosure actions, eviction action or collection action against the Plaintiffs.

I. Issue a Preliminary and Permanent Injunction against all of the Defendants from commencing any further or collection action against the Plaintiffs.

I. Preliminarily and Permanently Restrain and Enjoin Statebridge, American Residential Equities LIX, FCI and Westbourne and Note from executing any assignments of the original mortgage.

J. Issue a Declaratory Judgment that the alleged assignment of the mortgage and note referenced in this Complaint was not made by a corporate officer with requisite corporate authority pursuant to law.

K. Issue a Declaratory Judgment that on November 24, 2006, American Residential Equities LIX owned neither Plaintiffs' note nor mortgage and that the assignment was void ab initio.

L. That Plaintiffs be awarded Compensatory and punitive damages, attorney fees and costs against all defendants Acqura, Statebridge, American Residential Equities LIX, and Westbourne jointly and severally, for wrongful foreclosure, for breach of contract and for creating fraudulent documents, for recording fraudulent documents with the Cranston Recorder of Deeds, and for seeking to collect on a mortgage and note that they did not own.

M. Award the Plaintiffs statutory damages, compensatory damages, punitive damages, attorney fees and costs, and interest for each separate violation of the FDCPA by Marix and Statebridge.

N. Award such other relief as this Court deems just and proper.

                                                  Michele Perretta and
                                                  Anna Perretta
                                                  By their Attorney

March 7, 2014                      /s/ John B. Ennis # 2135
                                                  John B. Ennis, Esq. #2135
                                                  1200 Reservoir Avenue
                                                  Providence, Rhode Island 02920
                                                  (401) 943-9230

## CERTIFICATE OF SERVICE

      I certify that I transmitted by email a copy of this Amended Complaint on March 7, 2014 to the following:

      Michael Hagopian, Brian Grossman and Samuel Bodurtha at their usual email addresses by electronic filing.

                                                  /s/ John B. Ennis